NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KARL EDMARK, III, *Petitioner/Appellee,*

*v.*

BERENIKA SZYNKLARZ-EDMARK, *Respondent/Appellant.*

No. 1 CA-CV 25-0585 FC

FILED 06-25-2026

Appeal from the Superior Court in Maricopa County
No.  FN2023-000042
The Honorable Michelle Carson, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco PA, Phoenix
By Alexander Poulos, Elise B. Adams
*Counsel for Petitioner/Appellee*

Slaton Roebuck PLLC, Scottsdale
By Sandra L. Slaton, Kristin M. Roebuck Bethell
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Andrew J. Becke joined.

---

**C A T T A N I**, Judge:

¶1        Berenika Szynklarz-Edmark ("Wife") appeals from an award of $16,888 in attorney's fees in favor of Karl Edmark III ("Husband") in this family court proceeding.  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Husband and Wife married in 2018.  In 2021, on Wife's petition, the probate court appointed a guardian and conservator for Husband.  Husband also had a court-appointed attorney representing him, and a guardian ad litem had been appointed to represent his best interests.

¶3        In 2023, Husband's guardian filed a petition for dissolution on Husband's behalf.  The parties later entered into a settlement agreement allocating certain property between them.  The settlement included an investment account and several LLCs that held real estate in Arizona, Idaho, and Washington.  The court set a trial to resolve the remaining disputed issues, but at the time set for trial, the parties informed the court that they had reached a settlement agreement on all remaining issues.

¶4        The court entered a consent decree in November 2024 that incorporated both settlement agreements.  The consent decree stated that each party would bear their own attorney's fees, consistent with the parties' agreement as to fees "associated with the negotiation, drafting, and execution of this Agreement and the dissolution action, the probate proceeding . . . , and the Washington civil matter."  The agreement also required the parties to sign documents assigning the LLC interests ("Documents") within 30 days.  The court set a review hearing for mid-December.

¶5        According to Husband, he sent the Documents to Wife for her signatures on November 14, 2023.  Although Wife returned copies on December 4, 2024, they were not properly signed, and Husband asked Wife to comply two more times before the mid-December review hearing.  The

matter apparently was not resolved at that hearing because the court set another review hearing for January 2025.

¶6 Husband's attorney received Wife's signed Documents two days before the January hearing and, the next day, asked Husband's Washington attorney, Shaun Greer, if he needed anything else to record the Documents. Greer asked for more information to complete the transfer in Washington. Because the parties still had not completed the necessary paperwork by the January review hearing, the court set a status conference for March 5.

¶7 On three separate occasions, Husband's attorney asked Wife's attorney to respond to Greer's request for more information necessary to complete the transfer in Washington. The parties and their attorneys exchanged inquiries disputing whether, for the transfer in Washington, electronic signatures or "wet ink" signatures were required; that dispute had not been resolved by the March 5 status conference.

¶8 At the March 5 status conference, the court ordered Husband's attorney to send the Documents to Wife's attorney, who was ordered to have Wife sign them with "new, wet signatures" and return them to Greer in Washington by March 21, 2025. The court set another conference for March 25.

¶9 After additional exchanges, disputes and delay, Greer received documents with Wife's signature on March 19, but Wife had modified those documents without explanation. Greer advised that the changes were improper and Wife needed to sign the original version. Ultimately, Wife sent Greer the original Documents with her wet signature on March 24, 2025.

¶10 At the March 25 status conference, Husband asked the court to award him attorney's fees based on Wife's post-settlement conduct and delay in signing the Documents. The court expressed its inclination to award fees, noting that the lack of effective communication resulted in unnecessary delay and necessitated five hearings to secure signatures in an uncomplicated matter. The court denied Wife's request for an evidentiary hearing on the fee request and set a briefing schedule for a written fee application.

¶11 Husband requested a total of $16,888 in attorney's fees related to the back-and-forth communications about signing the Documents. Over Wife's opposition, the court awarded Husband $16,888 as requested without stating the basis for the award.

¶12        Wife timely appealed.  We have jurisdiction under A.R.S. §
12-2101(A)(2).

**DISCUSSION**

¶13        Wife argues that the superior court lacked a valid basis for
awarding Husband attorney's fees.  We review an attorney's fees award for
an abuse of discretion.  *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004).
Because neither party requested findings, we presume the superior court
found every fact necessary to support its ruling.  *See Rinegar v. Rinegar*, 231
Ariz. 85, 90, ¶ 20 (App. 2012); *see also Myrick v. Maloney*, 235 Ariz. 491, 495,
¶ 10 (App. 2014) (superior court need not make findings under A.R.S. § 25-
324(A) unless requested).

¶14        In his application for attorney's fees, husband cited two
potential bases for the award: A.R.S. § 25-324 and Arizona Rule of Family
Law Procedure 71(b).  Under A.R.S. § 25-324(A), the superior court may
award attorney's fees in a family case "after considering [1] the financial
resources of both parties and [2] the reasonableness of the positions each
party has taken throughout the proceedings."  Although the court must
consider both financial disparity and reasonableness, under the current
version of the statute, an award may ultimately be based on either of the
factors.  *Magee*, 206 Ariz. at 591, ¶ 8 n.1; *see also Birt v. Birt*, 208 Ariz. 546,
556, ¶ 38 (App. 2004).

¶15        First, Wife asserts that the superior court could not have
considered the parties' financial resources because it received no evidence
about that factor.  But while the record here lacked financial affidavits from
either party, other financial information shows they both have significant
financial resources.  The consent decree awarded each party significant real
estate along with several hundred thousand dollars in real property sales
proceeds.  Although not all property is valued in the decree, both parties
received significant assets.  This information provides a proper basis for the
court to conclude that Wife was able to pay the $16,888 in fees Husband
requested.

¶16        Wife's reliance on an allegedly inadequate record is
undermined by her own failure to file a financial affidavit or any updated
financial information in response to Husband's fee application.  Wife is not
entitled to relief based on a lack of information that she chose not to
provide.  *Cf. In re MH2009-002120*, 225 Ariz. 284, 287–88, ¶¶ 9–12 (App.
2010) (holding that a party who willfully refused to participate in an

examination cannot obtain relief based on the failure to conduct that examination).

**¶17** Relying on *Breitbart-Napp v. Napp*, 216 Ariz. 74, 83–84, ¶¶ 37–39 (App. 2007), Wife argues that the financial information available to the court was inadequate. In that case, this court vacated an award of more than $70,000 in fees under § 25-324 where the available financial information was substantially out-of-date: an 8-month-old financial affidavit from the husband, a more than 3-year-old financial affidavit from the wife, and other 20-month-old settlement information. *Id.* at 77–78, 84, ¶¶ 4–7, 12, 38–39. Here, although limited, the available financial information was significantly more recent, permitting the court to assess the parties' contemporaneous financial status. And significantly, the *Breibart-Napp* court invalidated the award for the additional reason that the superior court had erroneously applied a prevailing party standard, *see id.* at 84, ¶ 39, an issue not present here.

**¶18** The driving force behind the fee award in this case appears to have been the reasonableness of the parties' positions, not financial disparity. To be sure, the court must still *consider* the parties' financial resources before awarding fees under A.R.S. § 25-324(A) based on a party's unreasonableness, but the level of financial detail required is necessarily less than for an award based on financial disparity. *Compare Magee*, 206 Ariz. at 591, 593, ¶¶ 8 n.1, 18 (noting the distinction between the "reasonableness of positions" and "financial resources" provisions of § 25-324 and characterizing comparative financial disparity rather than absolute ability to pay as the "benchmark for eligibility" under the latter). The record here was sufficient for the court to have considered the parties' financial resources as required. And because neither party requested written findings, we presume the superior court considered the available financial evidence before it granted Husband's fee request. *See Rinegar*, 231 Ariz. at 90, ¶ 20; *Appels-Meehan v. Appels*, 167 Ariz. 182, 185 (App. 1991).

**¶19** As to reasonableness of positions, Wife argues that the superior court erred because the communication issues it cited are not "legal positions" that can justify an award under A.R.S. § 25-324(A). Beyond the "lack of communication," the superior court also noted that Wife inappropriately and unilaterally attempted to modify the Documents at the last minute despite the parties' negotiated agreement and after months of back-and-forth over the format of Wife's signature. Ultimately, Wife signed the original Documents on the eve of the final hearing. Wife also withheld the name of her Washington attorney without explanation, complicating matters by needlessly requiring communication through

multiple layers of attorneys, resulting in substantial fees that could have been prevented, rather than allowing the two Washington attorneys to directly address the specifics needed to comply with Washington law.

**¶20** This conduct went beyond a simple failure to correspond promptly and reflected unreasonable legal positions that the court properly considered. The superior court "is in the best position to observe and assess the conduct of the parties before it." *See MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 38 (App. 2011). Wife has provided no basis to override the court's discretionary determination that she took objectively unreasonable legal positions in the proceedings.

**¶21** Accordingly, Wife has not shown that the superior court erred by awarding Husband $16,888 in attorney's fees under § 25-324(A). Because we affirm on this basis, we need not address any possible alternative bases for awarding fees.

## CONCLUSION

**¶22** Husband requests an award of attorney's fees and costs on appeal, citing A.R.S. § 25-324 among other statutes. Having considered the relevant factors and in an exercise of discretion under A.R.S. § 25-324(A), we award Husband a portion of his reasonable attorney's fees and his costs on appeal upon compliance with ARCAP 21. *See also* A.R.S. § 12-342(A).

**¶23** We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR